State ex rel ATTORNEY GENERAL v. ROANOKE NAVIGATION COMPANY.

*Action for dissolution of Corporation—Creditors' Bill—Injunction.*

In an action brought for the dissolution of the Roanoke Navigation Company under the act of 1875, ch. 198, the court after publication of summons, has full control of the franchise and property of the company and of all persons interested in its affairs, whether creditors or others, in like manner as in a "creditors' bill;" and the refusal to grant an injunction restraining a creditor of the company from selling its franchise and property under an execution in his favor, is error.

APPLICATION of plaintiff for an injunction heard at Chambers in Halifax on the 1st of October, 1880, before *Graves, J.*

This is a petition for an injunction to restrain John A. Moore from proceeding to sell the franchise and property of the Roanoke Navigation Company, under executions in his favor, which have been levied upon said franchise and property. An act was passed by the general assembly of North Carolina at its session in the year 1812, entitled "an act to improve the navigation of Roanoke river," and to that end provided that books should be opened for subscription; and when a certain amount of stock should be subscribed, the subscribers, their heirs and assigns should be a

---

*Smith, C. J., did not sit on the hearing of this case.

45

corporation under the corporate name of "The Roanoke Navigation Company," with powers to sue and be sued, acquire real property for its uses, receive tolls and do other acts incident to a corporation. That the requisite amount of stock was taken and the company was duly organized, that the original charter was amended by several acts of the legislature, passed in the years 1816 and 1817, and under the act of 1816, the state of North Carolina became a stockholder to the extent of two hundred and fifty shares of stock. That the said company, in pursuance of its charter, did cut a canal from a point on said river near the present town of Weldon to a point near the town of Gaston, and erected thereon the usual locks, toll-houses, &c., and used the same for the purposes of navigation many years. The said company also became the owner of a large amount of real estate in Halifax county, for the purposes of said navigation, and now holds real estate of much value therein. On the 18th of March, 1875, the general assembly of this state passed an act, entitled "an act for the dissolution of the Roanoke Navigation Company." Acts 1874–'75, ch. 198. By the provisions of said act the attorney general was required, in the name of the state of North Carolina, to institute an action for the dissolution of said company; said action should be in the name of the state; the summons should be served on the officers and corporators of said company and others interested in the affairs of said company, by publishing a copy thereof as therein provided, and that before a judgment of dissolution of said corporation should be made, a receiver of the effects of said corporation should be appointed; and make the proper order for the settlement of its affairs as prescribed by chapter 36, section 39 of Battle's Revisal; that the judgment should be published in like manner as the summons is required to be, and upon such judgment the corporation should cease to exist, and all its works and property between the towns

of Weldon and Gaston, and at Weldon, including its canal
or canals, should be sold by the receiver on such terms as
the court shall adjudge, who shall convey by deed the same
to the purchaser.   That in pursuance of this act of assembly,
this action was commenced by the attorney general for the
state, at the spring term, 1875, of Halifax superior court,
for a dissolution of the corporation, for a sale of its cor-
porate effects and property, and the winding up and settle-
ment of the affairs of the company, upon the ground that
the said company had forfeited its charter, by reason of its
neglect for more than seven years before the commencement
of this action, to make use of any of its chartered powers or
perform any of its duties enjoined by the acts of its incor-
poration, to wit: to keep in repair the said canal and to
keep in navigable condition those parts of said river lying
between Weldon and Gaston, to provide boats or other
means of transportation of passengers or freight on either
said canal or river; and by a disuse of its corporate rights
and powers.

  That at spring term, 1877, of said court, one B. W. Spill-
man, as trustee, recovered a judgment against said company
for $160.50, of which $150 is principal; and at the same
term, Fanny Bass, as executrix of B. W. Bass, recovered a
judgment against said company for $154.50, of which $150
is principal.   The said judgments were duly docketed in
said county, and thereafter by assignment transferred to
John A. Moore, who is prosecuting their collection, and that
on the 12th of August, 1880, executions on said judgments
were issued to the sheriff of Halifax county and he had
levied the same on the franchise and real estate of said com-
pany, lying in Halifax county, and had advertised the same
for sale on the 26th of September ensuing.

  On the 24th of August, 1880, a petition was filed in the
cause setting forth the above facts, and the further fact that
the value of the property and franchise levied upon and ad-

vertised for sale was largely in excess of the amounts of said judgments, and if said sale was permitted to proceed the said property and franchise would probably be bought in by the judgment creditors or others at a sacrifice to the company and the state, and prayed that the said John A. Moore and the other creditors of said company be restrained and enjoined from selling said franchise and property, and that they be required forthwith to come in and be made parties to this action, to the end that said claims might be adjusted and equities ascertained and fixed. John A. Moore came in and demurred to all the petition, except that part which insisted that the said defendant and other creditors should be compelled to prosecute their claims in this suit and that their proceeding to sell the franchise and property of the company was illegal, and that part stating the value of the property; and to these he answered that he should not be compelled to prosecute his claim in this action, but had the right to prosecute the same in the usual course of law, and that he had no information as to the value of the property. Upon this petition and answer, His Honor, being of opinion that the creditors should pursue their remedies in this action, made an order restraining and enjoining the said John A. Moore from selling said land or franchise under said executions, and requiring him to appear at Warrenton on the 18th day of September, 1880, and show cause why the injunction should not be continued until the hearing. The hearing of the motion was continued until the 1st day of October, 1880, when His Honor, upon hearing the petition and answer at Halifax, adjudged that the application for an injunction be refused, from which judgment the state appealed.

*Attorney General* and *Thomas N. Hill,* for plaintiff.

Messrs. *Day & Zollicoffer. Mullen & Moore* and *J. B. Batchelor,* for defendant.

ASHE, J. The proceeding adopted in this case for the dissolution and winding up the affairs of the Roanoke Navigation Company is strictly in conformity to the provisions of the act of 1875—an act which seems to have been drawn up with much care and so intelligibly expresses its purpose and the proceedings prescribed for carrying it into execution, that its interpretation is rendered free from difficulty. We have no doubt it was the intention of the legislature to create a proceeding in nature of a " creditors' bill," but while they have had that remedy in view, in the provisions of the act, they have seen proper to vary somewhat from the established practice in such cases and make this a special proceeding, adapted to the particular circumstances of the case. It is the settled practice in bills filed by creditors in behalf of themselves and all other creditors, who may come in and make themselves parties, &c., that no injunction will be granted restraining creditors from instituting and prosecuting actions against the debtor before a decree to account is rendered in the cause, unless they have made themselves parties prior to that stage of the proceeding; in which case it is surmised the court would have the right to exercise that power. But prior to the decree, it is so regarded as the action of the plaintiff alone, that he has exclusive control over the case, and may dismiss or compromise the action at his option, which he cannot do after the decree. For then the cause and parties are under the absolute control of the court, and the property of the debtor is taken *in custodia legis,* and while the plaintiff still has the conduct of the suit, he ceases to have the absolute control, and cannot dismiss the action without the consent of the court, and in opposition to the wishes of the other creditors who may have made themselves parties.

But in the proceeding under the act of 1875, the publication of the copy of the summons, as prescribed therein, is deemed and held a sufficient service upon all the officers,

corporators and persons interested in the affairs of the company, and they are made thereby parties to the suit, subject to such rules and orders as the court may see proper to take in the progress of the action. And before judgment for dissolution, the court may appoint a receiver of its effects, and make the proper order for the settlement of its affairs, as prescribed in chapter 26, section 39, of Battle's Revisal, act of 1871-'2, ch. 199, § 39. By which act it is made the duty of the receiver, when appointed, to collect all debts owing to the company; to sell all its property and effects; to pay all persons having just claims against it; to distribute the surplus effects among the corporators, and pay all costs connected with the settlement.

We think the proper construction of the act of 1875 is, to give the court taking cognizance of the action full control after publication of the copy of the summons of the property and franchise of the company, and of persons interested in the affairs of the company, whether officers, corporators, or creditors, in like manner as the courts have and exercise in the ordinary " creditors' bill," after a decree to account, and sometimes under special circumstances, even before the decree. For if a judgment has been obtained against the debtor by a creditor before a decree, there may be special grounds to prohibit him from taking out execution, though such is not the ordinary rule. Adams Eq., 260. Aside from the general provisions of the act of 1875, which impliedly invest the court, taking cognizance of the case, with the power to interfere, to prevent a sale of the property and franchise of the company on execution, we think there are *special grounds* in this case for such an interference. For if a sale under the defendant's execution should be permitted to proceed, the purchaser would acquire not only the profits but the franchise, with the rights and privileges of receiving the fares and tolls, and recovering such penalties as might be imposed by law, for an injury to

the franchise, or for any other cause which such corporation might be entitled to recover, during the time limited in the said purchase of the franchise. Rev. Code, ch. 26, §§ 9, 10, 11 and 12. The property of the company, the rights of the corporators, and the interests of other creditors, would in all probability to a great extent be sacrificed by a forced sale, while the plaintiff in the execution would suffer no other inconvenience than that arising from delay. His debts would in no sense be imperilled or impaired by a postponement of their satisfaction. Such a sale would in a great measure thwart the purposes the legislature had in view in passing the act of 1875 for a dissolution, and winding up and settling the affairs of the company upon a fair and equitable basis.

We are of the opinion that considerations of equity and policy demand that the sale under the executions should be restrained. We are therefore constrained to hold there was error and that the injunction restraining John A. Moore from the further prosecution of his executions, should be continued to the hearing. Let this be certified to the superior court of Halifax county that proceedings may be there had in conformity to this opinion.

Error.             Reversed.